**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Case No. 17-cv-01898-MSK-MJW

SEA BREEZE LLC AND DAVID PARKER,

    Plaintiffs,

v.

THE BANK OF NEW YORK MELLON, THE PUBLIC
TRUSTEE'S OFFICE OF EL PASO COUNTY, COLORADO
AND ANY AND ALL OTHER PARTIES WHO MAY HAVE
AN INTEREST IN THE SUBJECT PROPERTY,

    Defendants.

**MOTION FOR SUMMARY JUDGMENT**

The Bank of New York Mellon, f/k/a The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A., as Trustee for Structured Asset Mortgage Investments II Trust 2006-AR6, Mortgage Pass-Through Certificates Series 2006-AR6 (*erroneously sued as* The Bank of New York Mellon) (**BoNYM**), moves for summary judgment under Rule 56.

**CLAIMS AND DEFENSES UPON WHICH BONYM SEEKS JUDGMENT**

**A.  BoNYM is Entitled to Summary Judgment on Claim 1: "Determination of Interests Pursuant to C.R.C.P. 105"**

    1.  **Burden of proof and elements**:

Mr. Parker and Sea Breeze bear the burden to prove they hold superior title to prevail on this claim. *Hutson v. Agric. Ditch & Reservoir Co.*, 723 P.2d 736, 738 (Colo. 1986). Their claim has one element: Mr. Parker and Sea Breeze hold superior title to BoNYM. *Id.*

2. **<u>Elements Mr. Parker cannot prove</u>**: Mr. Parker cannot prove he holds superior title to BoNYM. The undisputed facts confirm (**1**) BoNYM is the beneficiary of a deed of trust on the property and (**2**) Mr. Parker no longer holds title to the property:

a. Mr. Parker acquired title to the property in 2005. (**Ex. A**, Deposition of David K. Parker (**Parker Depo**.) at 27:1-13 and Ex. 2.)

b. Mr. Parker obtained a $486,000 loan in 2006. (**Ex. B**, Affidavit of Crystal Clopton (**Clopton Aff.**) ¶6 and Ex. 1.)

c. Mr. Parker executed a note in connection with the loan. (*Id.*)

d. Mr. Parker secured the loan with a deed of trust. (*Id.* ¶7 and Ex. 2.)

e. BoNYM is the current deed of trust beneficiary. (Request for Judicial Notice (**RJN**), Exs. 1, 2.)

f. The loan is in default. (Doc. No. 4 at 3 ¶11.)

g. Mr. Parker transferred title to Sea Breeze in 2013. (Parker Depo. at 113:6-20.)

h. Sea Breeze remains the property owner. (Doc. No. 4 at 3 ¶8.)

i. Therefore, the undisputed facts show BoNYM holds superior title to Mr. Parker.

3. **<u>Elements Sea Breeze cannot prove</u>**: Sea Breeze cannot prove it holds superior title to BoNYM. The undisputed facts confirm Mr. Parker encumbered the property and the six-year statute of limitations began running no earlier than 2010 (when BoNYM delivered its 2010 notice of election and demand (**NED**) to the public trustee), stopped running with each NED withdrawal and BoNYM's loan servicer's 2013 letter intentionally allowing Mr. Parker to avoid acceleration by paying only the arrears, and most recently restarted in 2016 (when BoNYM delivered its 2016 NED to the public trustee):

a. Mr. Parker obtained a $486,000 loan in 2006. (Clopton Aff. ¶6 and Ex. 1.)

b. Mr. Parker executed a note and deed of trust on the property in connection with the loan. (*Id.* ¶¶6, 7 and Exs. 1, 2.)

c. BoNYM is the deed of trust beneficiary. (RJN, Ex. 1.)

d. The note requires Mr. Parker to make monthly payments beginning in July 2006 and continuing through the June 1, 2046 maturity date. (Clopton Aff. ¶6 and Ex. 1 at ¶3(A.))

e. Mr. Parker understood he had an obligation to make loan payments for 30 years when he obtained the loan. (Parker Depo. at 31:11-16.)

f. The loan is in default. (Clopton Aff. ¶31 and Ex. 27.) Mr. Parker has not made any payments since 2008. (*Id.*) The payment due December 1, 2008 and all subsequent monthly payments remain outstanding. (*Id.*)

g. Colorado has a six-year limitations period for promissory note debts.[1] C.R.S. §§ 38-80-103.5(1)(a); C.R.S. § 4-3-118(a). The statute begins running at maturity unless the lender accelerates. *See e.g., Davis v. Wells Fargo Bank, N.A.*, No. 17-cv-00714-MSK-NYW, 2017 WL 4516830, at *5 (D. Colo. Oct. 10, 2017); *Hassler v. Account Brokers of Larimer Co., Inc.*, 274 P.3d 547, 549 (Colo. 2012); *see also* Findings of Fact and Conclusions of Law, *In re Carleno*, No. 16-21791-KTH, (Bankr. D. Colo. Jan. 22, 2018), Doc. No. 127 at 3 (analyzing whether the

---

[1] The Tenth Circuit recently rejected a borrower's statute of limitations argument because "the applicable limitations period for foreclosure proceedings in Colorado is 15 years[.]" *Obduskey v. Wells Fargo*, 879 F.3d 1216, 1224 (10th Cir. 2018). The court cited C.R.S. § 38-39-205 as support. *Obduskey* appears contrary to *Battle Mountain*, in which the Colorado Supreme Court held § 38-39-205 applies when "a party has commenced suit for default on the promissory note within the six-year limitations period [in § 13-80-103.5], and thereafter has reduced the note to judgment." *Mortg. Invs. Corp. v. Battle Mountain Corp.*, 70 P.3d 1176, 1186 (Colo. 2003). But to the extent the court is inclined to follow the Tenth Circuit, *Obduskey* presents another reason to award BoNYM summary judgment.

statute expired with reference to the date the lender "exercised its right to accelerate[.]")

  h.  The note contains optional acceleration and non-waiver clauses permitting, but not requiring, acceleration upon default. (Clopton Aff. ¶6 and Ex. 1 at ¶¶7(B), (D).) The deed of trust also contains a non-waiver clause providing, "Any forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy." (*Id.* ¶7 and Ex. 2 at ¶12.)

  i.  BoNYM first accelerated in June 2010 through delivering a notice of election and demand for sale (the **2010 NED**) to the public trustee. (*See id*. ¶8 and Ex. 3); *Kirk v. Kitchens*, 49 P.3d 1189, 1192 (Colo. App. 2002) (finding commencing foreclosure sufficient to accelerate if the note does not require formal acceleration notice). It subsequently accelerated a second time through delivering a second notice of election and demand for sale (the **2012 NED**) to the public trustee in 2012. (*Id.* ¶17 and Ex. 13.)

  j.  BoNYM abandoned its prior accelerations—and restarted any running statute of limitations clock—though (**1**) withdrawing the 2010 NED in 2011, (**2**) withdrawing the 2012 NED in July 2013, and (**3**) intentionally permitting Mr. Parker to cure by paying only the arrears in October 2013. (*Id.* ¶¶16, 27, 28 and Exs. 12, 23, 24.)

  k.  The 2010 and 2012 NED withdrawals alone gave clear notice BoNYM no longer intended to exercise its acceleration right or foreclose. (*Id.* ¶¶16, 27 and Exs. 12, 23.) The October 2013 letter similarly confirms BoNYM abandoned any prior acceleration. It instructed Mr. Parker must pay $193,972.27—the past-due amount only—on or before November 8, 2013 and warned the failure to do so "may result in acceleration of the entire balance . . . and commencement of foreclosure[.]" (*Id.* ¶28 and Ex. 24.)

The Utah federal court recently applied abandonment principles to similar facts. The borrower argued the statute began to run "when the Note was first accelerated." *Lewis v. Caliber Home Loans, Inc.*, No. 2:16-cv-01252, 2018 WL 485967, at *2 (D. Utah Jan. 18, 2018). The lender asserted the limitations period restarted when it rescinded its default notice and issued a new one.[2] *See id.* The court agreed with the lender, explaining it "was within its right to decelerate the debt," the rescission "stopped the running of the statute of limitations," and "a new statute of limitations" began to run when the lender recorded a new default notice. *Id.* at *3. The court noted "When faced with the issue of whether a Lender may unilaterally decelerate the debt under a Note, the 10th Circuit held that 'nothing in either [the Note or Trust Deed] expressly or implicitly precluded the lender . . . from cancelling the acceleration" to support its holding. *Id.* at *2 (citing *Koyle v. Sand Canyon Corp.*, 683 Fed. App'x 715, 724 (10th Cir. 2017)).

Other jurisdictions also instruct intentionally providing a new cure opportunity abandons prior acceleration and restores the loan to installment status.[3] *See Boren v. U.S. Bank, N.A.*, 807 F.3d 99, 105 (5th Cir. 2015); *see also Martin v. Fed. Nat'l Mortg. Ass'n*, 814 F.3d 315, 318-19 (5th Cir. 2016). In *Boren,* for instance, the Fifth Circuit held the lender abandoned its

---

[2] The lender rescinded its first default notice and recorded a new one the same day. *Lewis*, 2018 WL 485967, at *2.

[3] A statute, regulation or the contract may require the lender to accept the past-due amount only or to provide the borrower the past-due amounts (*e.g.*, in a monthly mortgage statement) in certain instances. *See e.g.,* C.R.S. § 38-38-104 (allowing borrowers to pay all sums "except any principal that would not have been due in the absence of acceleration" until the day before the sale). These situations are inapposite—and would not evidence deceleration—since the lender is complying with a legal obligation rather than intentionally abandoning a prior acceleration.

acceleration, stopping the running statute of limitations.[4]  *Boren*, 807 F.3d at 102.  The lender sent a default notice in 2009.  *Id.*  It then gave notice it accelerated.  *Id.* at 102, 105.  Later still, the lender notified the borrowers they "could bring their loan current by submitting the amount of their past due monthly payments—rather than the full balance of the loan—an provided [the lender] *would* accelerated the loan if the [borrowers] failed to cure . . . within forty-five days." *Id.* at 104.  The court held the second notice "manifested an intent to abandon the previous acceleration" and "[a]s a result, the limitations period . . . ceased to run at that point and did not accrue again until [the borrowers] defaulted again and [the lender again] exercised its right to accelerate[.]"  *Id.* at 106.

   l. BoNYM accelerated the loan a final time in April 2016, through delivering its most recent notice of election and demand to the public trustee.  (Clopton Aff. ¶30 and Ex. 26.)  2016 is less than six years ago.

   m. Therefore, the undisputed facts show the statute of limitations has not expired and BoNYM holds superior title to Mr. Parker.

**B.** **BoNYM is Entitled to Summary Judgment on its Tolling Affirmative Defense**

   1. **Burden of proof and elements**:

BoNYM bears the burden of establishing its tolling affirmative defense.  Colorado courts permit equitable tolling when strictly applying the statute of limitations would lead to an unjust result.  *Deutsche Bank Tr. Co. America v. Samora*, 321 P.3d 590, 596-97 (Colo. App. 2013)

---

[4] The Colorado bankruptcy court recently relied on *Boren.*  In *In re Carleno,* the debtor objected to the lender's proof of claim, protesting the statute of limitations expired.  Findings of Fact and Conclusions of Law, *In re Carleno*, No. 16-21791-KHT, Doc. No. 127 at 3.  The court allowed the claim based on its finding the lender "decelerated the Note" and noted, under *Boren*, the deceleration restored the note's original maturity date.  *Id.*

6

(citing *Shell W. E & P, Inc. v. Dolores Cnty. Bd. of Comm'rs*, 948 P.2d 1002, 1007 (Colo. 1997).

    2. **The undisputed facts show the court should toll the statute of limitations:**

In the event the court finds BoNYM's 2010 NED triggered the statute of limitations and the six-year statute continued running interrupted since then, the undisputed facts confirm the court should equitably toll the statute so BoNYM can complete its foreclosure:

*BoNYM could not complete its 2010 foreclosure within the one-year limit*

  a. BoNYM first initiated foreclosure by delivering the 2010 NED to the public trustee on June 25, 2010. (Clopton Aff. ¶8 and Ex. 3.)

  b. The public trustee set a November 3, 2010 initial sale date. (RJN, Ex. 3.) BoNYM had to complete its sale by November 2, 2011 as a result. *See* C.R.S. § 38-38-109(1).

  c. BoNYM could not meet the November 2, 2011 deadline due to Mr. Parker's loan modification requests. He testified he spent most of 2011 applying for a loan modification. (Parker Depo. at 156:10-13.) BoNYM's records also show he submitted requests for mortgage assistance to Bank of America, N.A. (**BANA**), as BoNYM's prior loan servicer, on (**1**) February 25, 2011 (Clopton Aff. ¶10 and Ex. 5); (**2**) March 24, 2011 (*Id.* ¶11 and Ex. 6); and (**3**) April 12, 2011 (*Id.* ¶11 and Ex. 7). BANA denied his modification request due to the failure to provide all required documents on June 23, 2011. (*Id.* at ¶13. and Ex. 9.) Mr. Parker then submitted a new request for mortgage assistance to BANA on or about October 24, 2011. (*Id.* at ¶14 and Ex. 10.) BANA reviewed his submission but did not complete its review (and deny Mr. Parker's request based on its net present value calculation) until after the last possible sale date. (*See id.* ¶15 and Ex. 11.) BoNYM had to withdraw its 2010 NED as a result. (*Id.* at ¶16 and Ex. 12.)

***BoNYM could not complete its 2012 foreclosure within the one-year limit***

d.      BoNYM re-initiated foreclosure by delivering the 2012 NED to the public trustee on March 13, 2012.  (*Id.* ¶17 and Ex. 13.)

e.      The public trustee set a July 18, 2012 initial sale date.  (RJN, Ex. 4.)  BoNYM had to complete its sale by July 17, 2013 as a result.  *See* C.R.S. § 38-38-109(1).

f.      BoNYM could not meet the July 17, 2013 deadline due to Mr. Parker's loan modification or short sale requests.  He testified he spent most of 2012 applying for a loan modification, and agrees his lender should not simultaneously review his account for a modification and proceed with foreclosure.  (Parker Depo. at 155:21-24, 156:10-18.)   BoNYM's records also show the following transpired between the 2012 NED and the July 17, 2013 last possible sale date:

1.      Mr. Parker submitted a request for mortgage assistance to BANA, as BoNYM's prior loan servicer, on or about May 15, 2012.  (Clopton Aff. ¶18 and Ex. 14.)

2.      Mr. Parker filed a verified response to BoNYM's motion for order authorizing sale on June 4, 2012, protesting the court should not enter an order authorizing sale because he "applied for and have an active loan modification with Bank of America, but they have been incredibly slow to make any kind of decision as of today's date."  (*Id.* ¶19 and Ex. 15.)

3.      Mr. Parker submitted a request for mortgage assistance to BANA, as BoNYM's prior loan servicer, on or about July 2, 2012.  (*Id.* ¶18 and Ex. 14.)

4.      BANA denied Mr. Parker's loan modification request due to his failure to provide all requested documents on November 2, 2012.  (*Id.* ¶21 and Ex. 17.)

5.      Mr. Parker requested approval to short sell the property in September

2012.  (*Id.* ¶22 and Ex. 18.)

6. BANA denied Mr. Parker's request for short sale approval on October 24, 2012.  (*Id.* ¶23 and Ex. 19.)

7. Mr. Parker submitted a new request for mortgage assistance to Specialized Loan Servicing, LLC (**SLS**), as BoNYM's former loan servicer, on or about January 29, 2013. (*Id.* ¶24 and Ex. 20.)

8. SLS placed the foreclosure on hold to allow time to complete its review on February 8, 2013.  (*Id.* ¶25 and Ex. 21.)

9. SLS denied Mr. Parker's modification request because it could not modify his payment to an affordable level on June 24, 2013, but allowed Mr. Parker until July 24, 2013 to request a second review.  (*Id.* ¶26 and Ex. 22.)

g. If BoNYM had proceeded to sale on the July 17, 2013 deadline, it would have foreclosed in the middle of the thirty-day period it allowed Mr. Parker to request a second review.  (*See id.* ¶26 and Ex. 22.)  BoNYM withdrew its 2012 NED on July 17, 2013 as a result. (*Id.* ¶27 and Ex. 23.)

### *Mr. Parker rejected Nationstar's loan modification offer*

h. Mr. Parker continued to seek a loan modification after servicing transferred from SLS to Nationstar Mortgage LLC.  (*See e.g., id.* ¶29 and Ex. 25.)  He testified Nationstar was the first servicer to give him a modification offer.  (Parker Depo. at 157:4-9.)  He rejected the offer and instead takes the position he should get a free house.  (*Id.* at 157:8-14.)

i. Strictly applying the statute will unfairly reward Mr. Parker for refusing to pay for many years while punishing BoNYM for refusing to rush to foreclosure while entertaining Mr.

9

Parker's multiple loss mitigation requests.

j.  Therefore, the undisputed facts show the court should equitably toll the statute in the event the court finds it began running with BoNYM's

**C.    BoNYM is Entitled to Summary Judgment on Claim 2: Declaratory Relief**

1.  **Burden of proof and elements**: Sea Breeze and Mr. Parker bear the burden of proving an "actual controversy" exists to prevail on their claim. *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). "[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III[.]" *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

2.  **Elements Sea Breeze and Mr. Parker cannot prove**: Sea Breeze and Mr. Parker cannot prove an actual controversy exists between BoNYM and them:

a.  Sea Breeze and Mr. Parker base their claim on the same allegations as their quiet title claim, as well as the allegation "In addition to the Deed of Trust being barred, Mr. Parker's personal obligation to satisfy the promissory note is also time barred." (Doc. No. 4 at 3 ¶21.)

b.  No actual controversy exists for the same reasons BoNYM is entitled to summary judgment on their quiet title claim. BoNYM incorporates its prior arguments by reference.

c.  Therefore, the undisputed facts show Sea Breeze cannot establish an actual controversy exists between Sea Breeze and BoNYM.

**CONCLUSION**

Because Sea Breeze and Mr. Parker's evidence, viewed in the light most favorable to them, is insufficient to establish all elements of their claims, BoNYM is entitled to summary

10

judgment. In addition, the undisputed evidence indicates BoNYM has proven its equitable tolling affirmative defense, independently warranting summary judgment.

Respectfully submitted, this 21st day of May, 2018.

<div style="margin-left: 50%;">

*s/ Taylor T. Haywood*
Justin D. Balser
Taylor T. Haywood
**AKERMAN LLP**
1900 Sixteenth Street, Suite 1700
Denver, Colorado 80202
Telephone: (303) 260-7712
Facsimile: (303) 260-7714
Email: justin.balser@akerman.com
Email: taylor.haywood@akerman.com

*Attorneys for defendant The Bank of New York Mellon f/k/a The Bank of New York as Successor in Interest to JPMorgan Chase Bank, N.A. as Trustee for Structured Asset Mortgage Investments II Trust 2006-AR6 Mortgage Pass-Through Certificates Series 2006-AR6 (erroneously sued as The Bank of New York Mellon)*

</div>

**CERTIFICATE OF SERVICE**

I certify on this 21st day of May, 2018, a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT** was filed electronically via CM/ECF and served on the following:

Keith A. Gantenbein Jr.
Matthew S. Coombs
GANTENBEIN LAW FIRM LLC
P.O. Box 777
Wheat Ridge, CO 80034

*Attorney for plaintiffs Sea Breeze LLC and David Parker*

/s/ Chelsie Willey
Chelsie Willey

12

43031497;1