IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-01898-MSK-NRN

SEA BREEZE, LLC, and
DAVID PARKER,

 Plaintiffs,

v.

BANK OF NEW YORK MELLON,

 Defendant.

---

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's ("BNY") Motion for Summary Judgment (**# 31**), the Plaintiffs' response (**# 32**), and BNY's reply (**# 33**).

**I. Jurisdiction and Material Undisputed Facts**

The pertinent facts are simple and undisputed. In 2006, Plaintiff David Parker purchased a parcel of real property located in Colorado Springs, Colorado. Mr. Parker financed that purchase with a note in the amount of roughly $480,000 secured by a Deed of Trust. At some point in time, BNY became the holder of the note and beneficiary of the Deed of Trust. (For purposes of simplicity, the Court will treat BNY as having been the initial lender and beneficiary, as doing so does not change the analysis herein in any way.)

Mr. Parker defaulted on the note in December 2008 and has made no payments on it since then. On June 25, 2010, BNY commenced proceedings to foreclose its Deed of Trust in the District Court for El Paso County, Colorado. Although BNY ultimately obtained C.R.C.P Rule 105 authorization to sell the property, it entered into discussions with Mr. Parker about the

1

possibility of refinancing the loan. Those discussions consumed most of 2011 but were unsuccessful, and on December 21, 2011, BNY withdrew its petition in the foreclosure action.

BNY commenced a second foreclosure action in March 13, 2012. Once again, this filing triggered a spate of negotiations and discussions. On July 13, 2013, BNY again withdrew its foreclosure petition. Then in 2013, Mr. Parker formed Plaintiff Sea Breeze, LLC, and without consideration transferred his interest in the property to Sea Breeze.[1] BNY filed a third foreclosure petition on April 13, 2016. That petition remains pending.

On June 30, 2017, the Plaintiffs commenced the instant action in the District Court for El Paso County, Colorado. They assert two claims: (i) declaration of the rights of the parties in the real property, but specifically requesting a determination that BNY's current foreclosure proceeding is untimely – this appears to be in the nature of a quiet title action under C.R.Civ.P 105(a)[2]; and (ii) declaration that Mr. Parker's "personal obligation to satisfy the promissory note is also time barred." BNY removed the action to this Court pursuant to 28 U.S.C. § 1332, and now moves (**# 31**) for summary judgment in its favor, arguing that its current foreclosure action is timely.

**II.    Analysis**

The claims in this action are governed by Colorado law. It provides for a six-year limitation period to enforce a written instrument. C.R.S. § 13-80-103.5(1)(a). When a note calls for installment payments, a new cause of action for breach of its terms accrues each time a

---

[1] This transfer would appear to deprive Mr. Parker of any interest in the subject real property, and thus eliminate his standing with regard to the first claim for relief. However, it would not extinguish his liability on the underlying note and thus he would have standing to bring the second claim for relief.
[2] As Mr. Parker has transferred his interest in the property to Sea Breeze, it would appear that only Sea Breeze brings this claim.

2

payment is due and unpaid. However, if the lender accelerates the indebtedness and demands payment in full, the claim accrues immediately as to all remaining installment payments. *Hassler v. Account Brokers of Larimer County, Inc.* 274 P.3d 547, 553 (Colo. 2012). The commencement of a foreclosure action constitutes acceleration of the underlying promissory note. *Kirk v. Kitchens,* 49 P.3d 1189, 1192 (Colo.App. 2002). Thus, commencement of a foreclosure action begins the running of the six-year limitation period in C.R.S. § 13-80-103.5(1)(a). Measuring from BNY's first foreclosure action initiated on June 25, 2010, the limitations period on Mr. Parker's note expired on June 25, 2016. Because BNY commenced the current foreclosure action on April 13, 2016, such action would be timely. The Plaintiffs concede this much.

However, the Plaintiffs argue that the statute of limitation on enforcement of the underlying note began running even before the filing of the first foreclosure action. They contend that the limitation period begins to run "from the date of default upon which the election to accelerate is based, not from the election itself". They contend that the limitation period began running as of December 2008. They rely upon *Lovell v. Goss*, 101 P. 72 (Colo. 1909) which so held. If it is applied here, it would render BNY's current foreclosure proceeding untimely.[3] Thus, the sole[4] question presented in this case is whether the statute of limitation on

---

[3] Not only would the expiration of the statute of limitation bar BNY from enforcing the terms of the note, it would also destroy any lien created by the Deed of Trust. C.R.S. § 38-39-207.

[4] BNY has made other arguments that the Court rejects. It argues that, if the limitation period has otherwise expired, the Court should equitably toll it because Mr. Parker's own actions in requesting loan modifications were the acts that prevented BNY from completing the previous foreclosures. In Colorado, equitable tolling would be appropriate if the Plaintiffs' "wrongful conduct prevented [BNY] from asserting [its] claims in a timely manner" (or possibly where "extraordinary circumstances" did so). *Brodeur v. American Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007). BNY argues that Mr. Parker's requests to engage in loan modifications caused

BNY's right to enforce the note and Deed of Trust accrued and began running as of Mr. Parker's first default on the note in December 2008 (under *Lovell*) or upon BNY's filing of the first foreclosure action in June 2010 (under the general rule discussed in *Hassler*).

Recently, numerous authorities applying Colorado law have called *Lovell*'s continuing vitality into question. Most significantly, the Colorado Supreme Court in *Hassler* explained that *Lovell* was "decided prior to Colorado's adoption of the UCC [and] is at odds with the rule adopted by a majority of states in determining the actual date for the cause of action to recover a debt that is accelerated at the option of the creditor." However, *Hassler* did not have to, and therefore did not, resolve whether *Lovell* remained viable. 274 P.3d at 557 n. 11. The Colorado Court of Appeals has also criticized *Lovell*'s reasoning or application as outdated. *See Green Tree Financial Servicing Corp. v. Short*, 10 P.3d 721, 723 (Colo.App. 2000) (refusing to apply *Lovell* because it "was decided long before the enactment in 1975 of [provisions of the UCC], which create the notice requirement applicable here"); *see also Application of Church*, 833 P.2d 813, 815 (Colo. App. 1992) (purportedly "distinguishing" *Lovell*, but effectively refusing to

---

it to dismiss its prior foreclosure actions, but it has not come forward with evidence that Mr. Parker's requests were frivolous, in bad faith, purely dilatory, or otherwise "wrongful" in some way. Nor does BNY argue that it lacked the ability to ignore or summarily deny those requests and simply complete the foreclosure sale(s) it had already been authorized to conduct. In the absence of <u>mis</u>conduct by Mr. Parker, the Court would not be inclined to grant summary judgment to BNY's on its equitable tolling argument.

The Court also declines to reach BNY's argument that it <u>de</u>-accelerated the indebtedness under the note by withdrawing the prior foreclosure petitions. The Colorado Court of Appeals, as a matter of first impression, only recently accepted the proposition that a debt, once accelerated, could thereafter be de-accelerated. *Bank of NY Mellon v. Peterson*, ___ P.3d ___, 2018 WL 6564869 (Colo.App. Dec. 13, 2018) ("we conclude that, in Colorado, a lender may abandon the acceleration of a note"). But assuming that BNY could de-accelerate obligations under the note by withdrawing its foreclosure action, question of the applicability of *Lovell* remains. Whether BNY's acceleration of the debt occurred as a result of it commencing foreclosure proceedings in 2010 or in 2016, *Lovell* would still begin running the limitation period from the first default in 2008. Thus, the question of de-acceleration question is irrelevant.

apply it). Judges of this court have similarly expressed doubts about *Lovell*'s rule. *Paggen v. Bank of America, N.A.*, 2018 WL 4075881 (D.Colo. Aug. 27, 2018) ("The issue with *Lovell* is that it appears to be ripe for reconsideration by the Colorado Supreme Court . . . The overwhelming weight of case law supports the proposition that the statute of limitations begins running at acceleration as opposed to default"); *Davis v. Wells Fargo Bank, N.A.*, 2017 WL 4516830 (D.Colo. Oct. 10, 2017) (on essentially identical facts to the instant case, rejected the application of *Lovell* and finding foreclosure action commenced in in April 2014, on a default that began in February 2008 and was first accelerated via a withdrawn foreclosure action in June 2008, to be timely). In contrast, the Plaintiffs have offered no contemporary case authority nor has this Court found any published authority from Colorado's appellate courts applying the holding of *Lovell* – that the statute of limitation for enforcing a written instrument runs from the date of the first default, not from the date of acceleration.

When sitting in diversity, this Court applies state law – here the law of Colorado as established by the Colorado Supreme Court. When there is no authoritative precedent from the Colorado Supreme Court, this Court must attempt to predict how the Supreme Court would rule. *Sundance Energy Oklahoma, LLC v. Dan D Drilling Corp.*, 836 F.3d 1271, 1277 (10th Cir. 2016). Here, this Court finds that the Colorado Supreme Court in *Hassler* has expressed its doubt about *Lovell*'s continuing viability and its inconsistency with "the majority rule." This Court predicts that, if the issue were to come before it, the Colorado Supreme Court would abandon the rule announced in *Lovell* and adopt the accrual-upon-acceleration rule suggested in *Hassler*.

Accordingly, this Court finds that the statute of limitation began running upon the commencement of BNY's first foreclosure action in June 2010, not upon Mr. Parker's initial

default in 2008. Therefore, BNY's current foreclosure proceeding, commenced in April 2016, is timely under C.R.S. § 13-80-103.5(1)(a).[5] Because the alleged untimeliness of the foreclosure proceeding is the basis for the Plaintiffs' claims herein, BNY is therefore entitled to judgment in its favor on those claims.

For these reasons, the Court **GRANTS** BNY's Motion for Summary Judgment **(# 31)**. The pertinent facts being undisputed, BNY is entitled to judgment in its favor on the Plaintiffs' claims that BNY's attempts to enforce the note and Deed of Trust via the pending foreclosure action are time barred. The Clerk of the Court shall enter judgment in favor of BNY and close this case.

Dated this 15th day of February, 2019.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

---

[5] To the extent that the terms of the note are critical to the determination of whether *Lovell* applies – and there is some indication in *Lovell* that the language of the notes and "the construction placed thereon by the parties at the time" is an important. 101 P.3d at 314. Applying such standard, the Court would find that the terms of the underlying promissory note evidence an agreement that the holder would not be deemed to waive any right if it did not accelerate the note upon Mr. Parker's first default. The Plaintiffs are correct that statutes of limitation operate by force of law and that parties cannot contractually agree to modify them to the detriment of the person against whom a claim might ultimately be brought, but to the extent that the parties' previously-memorialized intentions bear in any way on the accrual question here, the parties' intentions favor a construction that benefits BNY's position.